UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
98 MAR 26 PM 3: 5
N.D. OF ALABAMA

AGATHA BRYANT, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV-97-S-1539-M
)
CRUISES, INC., )
)
    Defendant. )

ENTERED
MAR 2 6 1998

MEMORANDUM OPINION

    This action is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes the motion is due to be granted.

I. SUMMARY OF FACTS

    Defendant, Cruises, Inc., is a New York corporation with its principal place of business in Syracuse, New York. It is a retail travel agency specializing in vacation voyages on deep-water vessels. (Christen Affidavit ¶ 2.) Agatha Bryant, a resident of Centre, Alabama, visited defendant's Gadsden, Alabama office to discuss arrangements for a family reunion on an ocean liner. (Complaint at 1; Bryant Affidavit at 1.) Bryant alleges that she

> explained to them what we wanted and asked for their assistance. They arranged the transportation back and forth to the cruise and the cruise itself. Cruises, Inc., picked out the cruise line and the ship that we took. Cruises, Inc., was going to be responsible from the day we left for providing the facilities, services and back-up if needed.

(Id.) Bryant booked passage through defendant's agents on Carnival Cruise Lines' ship, *Fantasy*, beginning July 11, 1996. (Christen

Affidavit ¶ 3.) Bryant was injured on the third day of the cruise, July 13, 1996, when she fell down a ship stairwell.

> After we arrived on the ship and began our cruise, the special events that they provided for us began. During one of these events, we were in the lounge area watching video of the previous days events, when I approached the bar to get directions and before I could reach the bar, I fell down a stairwell which blended in with the area. There was a "watch your step" sign on the other side, but not the side I fell from.

(Bryant Affidavit at 2.)

Bryant asserts two claims against defendant. Count One alleges that Cruises, Inc. "negligently controlled, planned, designed, constructed, and inspected and cleaned the premises involved in this lawsuit." (Complaint at 2.) Count Two asserts identical allegations, except that Bryant contends her injuries were caused by "the wantonness of the defendants." (*Id.* at 5 (emphasis supplied).) Bryant seeks damages in each count for the sum of $75,000.00, plus interest and costs, for the following injuries:

> a bruised tailbone, injuries to her back; she was caused to be bruised, contused, strained, sprained and otherwise greatly battered; she was caused to suffer excruciating physical pain and suffering; she was caused to suffer severe mental anguish and stress; she was caused to be both temporarily totally disabled and permanently partially disabled; she was caused to incur medical expenses in the form of drug costs, physicians charges, hospital charges and other medical charges in obtaining treatment for herself and she will be in the future caused to incur medical expenses for treatment for herself; she was caused to lose time from gainful employment and hence suffer lost wages; her earning capacity was caused to decrease, all to her detriment.

(Complaint at 3 and 5.)

2

## II. FEDERAL JURISDICTION

Bryant curiously asserts jurisdiction "[p]ursuant to the Federal Tort Claims Act, Title 28 U.S.C. § 2674 and under Title 28 U.S.C. § 1346(b) ...." (Complaint ¶ 2.) No conceivable construction of the alleged facts renders either statute applicable to this case. The Federal Tort Claims Act (FTCA), enacted in 1945, authorizes suits against <u>the United States</u>, exclusively in district courts, for money judgments for personal injuries caused by government employees acting within the line and scope of their federal employment. "The FTCA operates as a limited waiver of the federal government's sovereign immunity for certain common-law torts" committed by federal employees or agencies. *Ivey v. United States*, 873 F. Supp. 663, 667 (N.D. Ga. 1995). On the other hand, 28 U.S.C. § 1346(b) recites that district courts "shall have exclusive jurisdiction of civil actions on claims <u>against the United States</u>, for money damages, ... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government...." (Emphasis added.) Thus, the United States is the only proper defendant under either statute relied upon by plaintiff. Bryant is not asserting tort claims against the United States or any of its employees or agencies, however.

Bryant's claims, which hinge primarily on events occurring aboard a cruise ship while at sea, are more properly pled in admiralty. *See, e.g., Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d

3

550 (1959)(legal rights and liabilities arising from conduct allegedly causing injury aboard ship on navigable waters is "within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law"). Under admiralty law, "a ship, as a common carrier, owes a special duty to its passengers." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984)(citing *Defrier v. The Nicaragua*, 81 F. 745 (S.D. Ala. 1897)("the carrier must subject his passengers to no suffering or inconvenience which can be avoided by reasonable care and effort")). A breach of that duty by the carrier is a "maritime tort." *Kornberg*, 741 F.2d at 1334.

Plaintiff does not expressly assert admiralty jurisdiction. She does allege, however, that "[t]he defendant, Cruises, Inc., <u>owned and operated</u> a cruise ship known as the Fantasy." (Complaint at 1 (emphasis supplied).) Moreover, she contends that Cruises, Inc. had a duty to "either warn the plaintiff of the dangerous and defective condition or to make the premises safe." (*Id.* at 2.) Those allegations expose a fundamental error underlying this action. Plaintiff presents no evidence to establish that Cruises, Inc. either owned or operated the *Fantasy*, or that, as her travel agent, it had a duty to warn her of dangers on a ship it neither owned nor controlled. Indeed, the affidavit of Holley S. Christen, defendant's chief financial officer, effectively rebuts plaintiff's allegations.

Cruises Inc. has never owned, operated, managed,

4

>controlled or had any financial interest in *Fantasy* or any other cruise ship. Rather, *Fantasy* is owned and operated by Carnival. Cruises Inc. has never owned, operated, managed, or controlled Carnival or been owned, operated, managed, or controlled by Carnival, and neither corporation owns stock of or has any other financial interest in the other. The two corporations have no officers, directors, or employees in common. The only connection between the two corporations is that, as a retail cruise agency, Cruises Inc., like thousands of other retail travel agencies, sells, for a commission, cruises operated by Carnival as well as for other cruise lines.

(Christen Affidavit ¶ 4.) Plaintiff makes no effort to challenge Christen's testimony. Because plaintiff has not asserted admiralty jurisdiction, and because plaintiff has not sued the owner/operator of the cruise ship on which she was injured, this court will not assume admiralty jurisdiction.

Nevertheless, it is apparent that an alternate source of federal jurisdiction over plaintiff's claims may exist. Plaintiff's claims involve citizens of different states and an amount in controversy that exceeds $75,000. (*See* Complaint at 3 and 4.) Even though the complaint is silent on this point,[1] jurisdiction in this court is proper, if at all, under the diversity statute. 28 U.S.C. § 1332. Accordingly, the court will assume diversity jurisdiction of the controversy.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

---

[1] Although plaintiff does not mention diversity in her complaint, diversity jurisdiction is asserted on the civil cover sheet accompanying the complaint.

5

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

6

## III. DISCUSSION

There is another fundamental problem with this case, which neither party has addressed in brief. As previously observed, if this court has jurisdiction of this action at all, it attaches because of the diversity statute. In such cases, the court is bound by the *Erie* doctrine to apply state law to substantive issues: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). But that pronouncement — particularly when considered in the context of the peculiar facts of this case — begs a question: which State's law?

Defendant is a New York corporation; plaintiff is a citizen of the State of Alabama; the action was commenced in this district. The Supreme Court commands that, in such circumstances, this court is to apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). The choice-of-law rule traditionally applied by Alabama in tort cases is *lex loci delicti*: the substantive law of the place of the wrong. *See* Roberts & Cusimano, *Alabama Tort Law Handbook* § 39 (2d ed. 1996)(discussing controlling authorities).

Here, however, this court is not informed of the place where the injuries complained of occurred, other than this cryptic statement: "After we arrived on the ship *and began our cruise*...."

7

(Bryant Affidavit at 2 (emphasis supplied).)  In other words, the cruise ship apparently was at sea.  But *where* at sea?  In what territorial waters?  Neither party informs this court of the identity of that domain it might see scanning the factual horizon through the lens of Alabama's *lex loci delicti* telescope.[2]

At the risk of incurring the same censure imposed by the Supreme Court upon the former Fifth Circuit in *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975),[3]

---

[2] They present the situation of Christopher Columbus: when he weighed anchor for "India" or the "Orient," he was not sure where he was going; when he made landfall, he did not know where he was; when he at last dropped anchor in his home port upon the return voyage, he did not know where he had been.

[3] Professor Wright observes that, in *Day & Zimmerman*, the Supreme Court made clear that its holding in *Klaxon* was to be followed, and that the Court "did so in the most uncompromising and mechanical fashion."  19 Charles Alan Wright et al., *Federal Practice and Procedure* § 4506 (2d ed. 1996).  He described the underlying facts and ultimate holding in *Day & Zimmerman* as follows:

> The premature explosion of an artillery shell in Cambodia had injured a soldier from Wisconsin and killed another from Tennessee. The shell had been manufactured in Texas by a company whose principal place of business was in Pennsylvania.  A diversity of citizenship suit for the injury and death was brought against the manufacturer in a federal court in Texas.  The Fifth Circuit concluded that under Texas conflicts rules, the law of Cambodia certainly would apply to the wrongful death claim and perhaps to the personal injury claim.  Cambodian law would require proof of fault by the manufacturer.  On the other hand, Texas, Wisconsin, Tennessee, and Pennsylvania all apply strict liability to manufacturers.  The Fifth Circuit held that because Cambodia had no interest in this dispute between American litigants, the strict liability rule of all the interested jurisdictions should govern.
>     The Supreme Court summarily reversed without hearing argument. In a brief opinion, it stated that the Fifth Circuit, in refusing to apply Texas choice-of-law rules, must have "misinterpreted our longstanding decision in *Klaxon* * * *, or else determined for itself that it was no longer of controlling force in a case such as this." The Court then repeated the rule of *Klaxon* and the principle of uniformity, and tersely added: "A federal court in a diversity case is not free to engraft onto those state [conflicts] rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits."
>     Given the Supreme Court's reaffirmation of *Klaxon* in *Day & Zimmermann*, absent the most exceptional circumstances, it is settled that as to matters governed by state law under *Erie*, a federal court must follow the choice-of-law rules of the state in which it is sitting to determine which state's law to apply.  This proposition

8

this court shall attempt to resolve the choice-of-law quandary by focusing upon what appears to be the gravamen of plaintiff's claims. She alleges:

> 6. That defendant, Cruises, Inc., knew or should have known that the floor, stairs and area around the floor and stairs rendered the premises dangerous and defective and that if failed to either warn the plaintiff of the dangerous and defective condition or to make the premises safe. The defendant, Cruises, Inc., maintained its premises in an negligent manner.
>
> ...
>
> 8. Plaintiff, Agatha Bryant alleges that she suffered all of her wounds, injuries, losses and damages as a proximate consequence of the negligence of the defendants negligently controlled [sic], planned, designed, constructed, and inspected and cleaned the premises involved in this lawsuit.

(Complaint at 2.) Plaintiff thus appears to be claiming that defendant negligently inspected the cruise ship (thereby failing to appreciate the danger of the condition that allegedly caused her fall and resultant injuries) and/or that defendant negligently failed to warn her of the dangerous condition of the premises. If that is a correct appraisal of her claims, both acts would have occurred at the place where the ship was docked upon plaintiff's boarding: Miami, Florida. Accordingly, this court shall apply the substantive law of that State to plaintiff's claims.

**A. Negligence**

Under Florida law, a plaintiff alleging negligence must

---

has been enunciated, often in perfunctory fashion, in innumerable lower federal court decisions subsequent to *Klaxon* and again following *Day & Zimmermann*.

*Id.* at 87-88 (footnotes omitted).

9

establish the following elements: "duty, breach, harm and proximate causation." *Davis v. Bell*, 705 So. 2d 108, 109 (Fla. Dist. Ct. App. 1998). Bryant contends Cruises, Inc. owed her a duty not to place her "in harms way," presumably by inspecting the ship and making it safe before her embarkation. Yet, plaintiff cites no authority for imposing such a duty on a travel agency. The court's research reveals several Florida cases which, taken together, demonstrate that such a duty will be imposed only on a defendant which owns, operates, maintains, or otherwise controls the ship.

In *McCauley v. Eastern Steamship Lines, Inc.*, 211 So. 2d 72 (Fla. Dist. Ct. App. 1968), for example, a cruise ship passenger sued to recover for injuries sustained when her deck chair collapsed. The Florida District Court of Appeals found the following evidence presented a genuine issue of material fact as to whether Eastern Steamship Lines, which was not the owner of the cruise ship, nevertheless operated, maintained, or controlled the ship.

> From the deposition it is clear that [defendant] did not own the vessel and [defendant's] vice president stated that appellee neither operated nor controlled the vessel. However, the deposition established that the [defendant] scheduled the cruises, selected the ports of call of the cruises and the dates and times of arrival and departure, established the prices to be charged for such cruises, and handled all advertising and dealing with travel agents and bureaus for the sale of the tickets, reservations, and distribution of literature and brochures for said cruises; furthermore, [defendant] procured and hired all personnel to be used aboard the ship, and ... retained under its control all funds received from the sale of tickets for the account of the

10

> owner, from which funds [defendant] paid all ship personnel, and paid all bills for food, fuel, repairs, dockage and any other expenses for operation of the ship. ... [T]he foregoing facts would justify an inference that [defendant] to some extent did operate, maintain and control the ship, an inference which might result in the [defendant] incurring liability.

*McCauley*, 211 So. 2d at 73-74.

Similarly, in *Eastern Steamship Corp. v. Egan*, 246 So. 2d 609 (Fla. Dist. Ct. App. 1971), plaintiff sought recovery for injuries sustained when his leg fell through a hole in the gangplank as he was leaving the ship.[4] Following a bench trial, the trial court entered judgment for the plaintiff. The judgment was affirmed on appeal because the appeals court determined that "there is substantial competent evidence to support the finding of the trial court with respect to the operation, maintenance and control of the vessel 'Ariadne' by the defendant at the time and place of plaintiff's injuries." *Eastern Steamship*, 246 So. 2d at 609.

Like the defendant in the *McCauley* case, Cruises, Inc. does not own the vessel on which plaintiff was injured. Bryant could overcome that hurdle, as the plaintiffs in *McCauley* and *Eastern Steamship* did, however, by presenting "substantial competent evidence" that Cruises, Inc. exerted control over some, or all, facets of the cruise ship operation. Yet, Bryant has not done so. The unrebutted testimony of Ms. Christen establishes defendant's status as a mere ticket agent, effectively demonstrating the

---

[4] Plaintiff was not a passenger. He was aboard the ship to bid farewell to friends, and his fall occurred as he was leaving just prior to the ship's departure. His status as a non-passenger, however, was not pertinent to the court's decision.

11

absence of a genuine issue of material fact. In turn, Bryant presents no evidence to justify an inference that Cruises, Inc., exerted any control over the *Fantasy*. Her failure to present evidence sufficient to support such an inference thus compels dismissal of plaintiff's negligence action.

Numerous other jurisdictions facing similar facts have rejected claims against travel agencies based on theories similar to Bryant's. Although the cases discussed hereafter do not apply Florida law, each turned on the same element which dooms Bryant's claims herein: a travel agent has no duty to inspect, or otherwise make safe, a cruise ship which it does not own, control, or otherwise operate.

In *Lavine v. General Mills, Inc.*, 519 F. Supp. 331 (N.D. Ga. 1981), for example, plaintiff sought recovery for injuries suffered when she slipped and fell on rocks on a Fiji Island beach during a trip arranged and sold by the defendants, a tour package seller and tour package planner. The court rejected plaintiff's claims:

> To the extent that plaintiff's ... claims are based upon premises liability (*i.e.*, failure to warn of a hazardous condition, failure to protect an invitee), they support no cause of action against these defendants, since neither of them was the owner or occupier of the island where plaintiff fell. ... [T]he court can discern no duty that these defendants owed to plaintiff to warn her of or to protect her from the hazard that caused her injury.

*Lavine*, 519 F. Supp. at 335. Significantly, Lavine did not sue Blue Lagoon Cruising Co., the owner/operator of the boat which took her to the rocky beach where she fell.

12

> An essential premise supporting much of plaintiff's claim is that the Blue Lagoon Cruising Company, not a defendant, was defendants' agent and that defendants are liable for their agent's alleged transgressions. That assertion ignores the plain facts, however. The record indicates beyond peradventure that Blue Lagoon was an independent contractor that provided a service to defendants and their tour members.

*Id.* at 335-36. Accordingly, the court refused to impose liability on defendants for the alleged negligence of Blue Lagoon, an independent supplier of services. Even if Blue Lagoon was defendants' agent, the court found "no conceivable duty on their part that was breached by them so as to make out a claim of negligence. ... [N]ot the slightest claim is made or evidence presented that the defendants caused or in any way contributed to the slip in this case." *Id.* at 338. Thus, the court followed the "plain trend [of cases refusing] to impose liability upon travel agents for injuries such as plaintiff's regardless of the theory advanced." *Id.* at 337; *see also, e.g., Honeycutt v. Tour Carriage, Inc.*, No. 5:95CV134-MCK, 1996 WL 933861, *5 (W.D.N.C. March 18, 1996)("[T]he fact that [the travel agency] did not operate or control the [activity in which plaintiff was injured] is alone sufficient grounds for this Court to grant summary judgment in their favor"); *Stafford v. Intrav, Inc.*, 841 F. Supp. 284 (E.D. Mo.), *aff'd,* 16 F.3d 1228 (8th Cir. 1993)(tour operator not liable for injuries suffered by plaintiff who fell down an open gangway on cruise ship because tour operator did not control the ship and did not undertake any implied contractual duty of safe passage); *Klinghoffer v. S.N.C. Achille Lauro*, 816 F. Supp. 934 (S.D.N.Y.

13

1993)(plaintiff sued for injuries suffered when cruise ship was hijacked; court granted summary judgment for travel agency and marketing agent of cruise package because neither of them owned, operated, or controlled the cruise ship or was responsible for ship security); *Raskin v. Ulysses Lines, Ltd.*, No. 79 Civ. 4275 (HFW)(S.D.N.Y. Sept. 10, 1980)(slip opinion)(travel agent "did not stand in a relationship *vis-a-vis* plaintiff such as to owe a duty to her to investigate the safety of the vessel. Defendant agreed to arrange a tour and supply a ticket to plaintiff; it did not insure her safety aboard the vessel").

Moreover, even if the court assumes defendant exerted sufficient control over the operation of the *Fantasy* to impose a duty to warn, such a duty arises only if defendant knew of the dangerous conditions onboard. *See Shurben v. Dollar Rent-A-Car*, 676 So. 2d 467, 468 (Fla. Dist. Ct. App. 1996)(rental car agency had duty to warn customer of known, foreseeable dangers in light of its superior knowledge of local conditions). Indeed, even a ship owner has a duty to warn passengers only of "dangers known to the carrier in places where the passenger is invited to, or may reasonable be expected to visit." *Carlisle v. Ulysses Line Ltd.*, 475 So. 2d 248, 251 (Fla. Dist. Ct. App. 1985). Again, Bryant presents no evidence that Cruises, Inc. was aware of the alleged unsafe condition.

On the other hand, defendant provides evidence that the firm selected Carnival based, in part, on its reputation for "providing

14

enjoyable cruises aboard safe, reliable cruise ships." (Christen Affidavit ¶ 7.) Moreover, no complaints of unsafe conditions on a Carnival cruise ship have been lodged with Cruises, Inc. since they began selling Carnival cruises in 1981.

> We monitor our customers' experience on cruises by requesting them to fill out surveys after their cruises. The surveys are then tabulated, and as part of my duties in my position, I review the summaries. the results show that customers are nearly always highly pleased with their Carnival cruises and that there is no pattern of complaints about Carnival cruises and that there is no pattern of complaints about any aspect of Carnival cruises, including the safety of Carnival ships. In particular, we have received no reports that *Fantasy* or any other Carnival ship was, in any respect, not safe or not properly operated, designed or maintained.

(*Id.*) Plaintiff offers nothing to rebut this evidence. In fact, plaintiff was in a better position to avoid the danger of an open stairwell than defendant. Defendant "had no duty to warn her of a danger she could have observed but about which they knew nothing." *Honeycutt*, 1996 WL 933861, *5.

**B. Wantonness**

In Florida, wantonness "must be established by facts evincing a reckless disregard of human life or rights which is equivalent to an intentional act or a conscious indifference to the consequences of an act." *Dyals v. Hodges*, 659 So.2d 482, 485 (Fla. Dist. Ct. App. 1995)(citation omitted); *see also White Construction Co. v. Dupont*, 455 So. 2d 1026, 1029 (Fla. 1984)(wantonness is "grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them"). Plaintiff presents no

15

evidence to support such a claim against Cruises, Inc. Even assuming an unsafe condition existed on the *Fantasy*, plaintiff submits no evidence that Cruises, Inc. was aware of the condition. Defendant's chief financial officer submits unrebutted testimony that Cruises, Inc. was unaware of any unsafe conditions on Carnival cruise ships during the fifteen years it has sold Carnival cruises. The unrebutted evidence establishes only that defendant sold plaintiff tickets for a trip on the cruise ship, *Fantasy*, onboard which plaintiff fell and was injured. Those facts alone do not suggest reckless indifference to plaintiff's safety. Therefore, Count Two also is due to be dismissed.

### C.  Breach of Warranty

Plaintiff's claims primarily sound in tort. Yet, she arguably also asserts a claim based on the theory that defendant guaranteed her a safe trip. That claim is properly treated as a breach of warranty claim, and is "interpreted according to general contract principles." *Ex parte Miller*, 693 So. 2d 1372, 1376 (Ala. 1997).[5] Yet, plaintiff submits no evidence of such a guarantee. Although she asserts in affidavit that Cruises, Inc. "was going to be responsible from the day we left for providing the facilities, services and back-up if needed," those vague contentions do not

---

[5] For actions sounding in contract, the Alabama rule of *lex loci contractus* governs: the law of the place where the contract was formed. *See, e.g., American Nonwovens, Inc. v. Non Wovens Engineering, S.R.L.*, 648 So. 2d 565, 567 (Ala. 1994)("the choice of law rule followed by Alabama provides that the law of the state wherein the contract was executed governs questions regarding the validity and interpretation of the contract"). Here, plaintiff purchased cruise tickets from defendant's office in Gadsden, Alabama. Thus, any express warranty was made in Alabama, and must be analyzed under contract principles drawn from Alabama law.

16

rise to the level of an express guarantee of traveler safety. (*See* Bryant Affidavit at 1.)

To the contrary, Cruises, Inc. presents testimony that it made no guarantee of safety in its "brochure, flyer, itinerary, or anywhere else." (Christen Affidavit ¶ 8.) The only other evidence reflecting the terms of an agreement between Cruises, Inc. and plaintiff is the invoice provided by Cruises, Inc. That writing, as a matter of law, embodies the entire agreement between plaintiff and defendant. *Rines v. Freightliner Trucks of Dothan, Inc.*, 702 So. 2d 163, 165 (Ala. Ct. Civ. App. 1997)(citations omitted)("When an agreement of the parties is evidenced by a writing, all statements, promises, and negotiations made before the execution of the written contract are merged into the final written contract").

Cruises, Inc.'s standard invoice for cruise bookings contains the following disclaimer:

**CUSTOMER DISCLOSURE NOTICE**

To our customers: Please read our Consumer Disclosure Notice in its entirety.

**IT'S IMPORTANT.**

Cruises Inc. is acting as intermediary and agent for suppliers identified on this invoice in selling services, or in accepting reservations or bookings for services that are not directly supplied by this travel agency (such as air carriage, hotel accommodations, ground transportation, meals, tours, cruises, etc.) This agency, therefore, shall not be responsible for breach of contract or any intentional or careless actions or omissions on the part of such suppliers, which result in any loss, damage, delay, or injury to you or your travel companions or group members. Unless the term "guaranteed" is specifically stated in writing on your tickets, invoice, or reservation, itinerary, we do not

17

> guarantee any of such suppliers' bookings, reservations, connections, scheduling or handling of special effects.
>
> Travel agent shall not be responsible for any injuries, damages, or losses caused to any traveler in connection with ... abnormal conditions or developments, or any other acts, omissions, or conditions outside the travel agent's control. By embarking on his/her travel, the traveler voluntarily assumes all risks involved with such travel, whether expected or unexpected. Traveler is hereby warned of such risks, and is advised to obtain appropriate insurance coverage against them. Your retention of tickets, reservations, or bookings after issuance shall constitute a consent to the above, and an agreement on your part to convey the contents hereto to your travel companions or group members.

(Christen Affidavit, Exhibit A.) Under Alabama law,[6] such a disclaimer may bar liability for breach of warranty. *Rines*, 702 So. 2d at 165 (summary judgment on breach of warranty claim appropriate when "agreement clearly disavows all warranties"). Regardless of the enforceability of such a provision,[7] the court finds

> it evidences the lack of any express agreement or warranty on the part of [the travel agency] for safe passage during the cruise. Plaintiffs do not allege any facts from which such a warranty could be inferred. Nor do plaintiffs allege facts rebutting the affidavits

---

[6] See note 6 *supra*.

[7] The Limitation of Vessel Owner's Liability Act may bar enforcement of such a disclaimer:

> It shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers ... to insert in any ... contract, or agreement any provision or limitation (1) purporting, in the event of ... bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner, master, or agent from liability, or from liability beyond any stipulated amount, for such loss or injury.... All such provisions or limitations contained in any such ... contract, or agreement are declared to be against public policy and shall be null and void and of no effect.

46 App. U.S.C. § 183c. Neither party discusses the Act's application to this case. In any event, the court need not determine whether the disclaimer runs afoul of the Act, because the court does not base its decision on enforcement of the disclaimer. Rather, the court relies on the disclaimer only as evidence that Cruises, Inc. made no express or implied warranty of safe passage.

18

> submitted by [defendants], swearing that before the 1985 hijacking Lauro was well-respected within the travel industry, and that they had received no complaints about security procedures aboard any Lauro ships.

*Klinghoffer*, 816 F. Supp. at 936. Similarly, Cruises, Inc.'s disclaimer evidences its lack of intent to guarantee plaintiff's safe passage during her cruise. Accordingly, any claim for breach of warranty is due to be dismissed.

### IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **26th** day of March, 1998.

_____
United States District Judge

19